FILED
NOV 16 2001
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| James M. Tibor, | ) | |
| Plaintiff, | ) | Case No. 01 C 7207 |
| vs. | ) | Judge Matthew F. Kennelly |
| Connaissance Consulting, LLC, | ) | Magistrate Judge Morton Denlow |
| Defendant. | ) | |

**NOTICE OF FILING**

DOCKETED
NOV 19 2001

TO: Peter S. Lubin
Vincent L. DiTommaso
DiTOMMASO & ASSOCIATES, P.C.
1315 West 22nd Street, Suite 225
Oak Brook, Illinois 60523

**PLEASE TAKE NOTICE** that on November 16, 2001, we filed with the Clerk of the United States District Court, Northern District of Illinois, Eastern Division, Chicago, Illinois, the foregoing **Appearance** and **Answer and Counterclaim of Defendant Connaissance Consulting, L.L.C.,** copies of which are attached hereto and served upon you.

Mark N. Senak

Mark N. Senak
ROBINS, KAPLAN, MILLER & CIRESI
55 West Wacker Drive, Suite 1400
Chicago, Illinois 60601
312-782-9200
Ill. Bar. 6196583

4038066.1



**CERTIFICATE OF SERVICE**

I, Elfriede E. Karsch, a non-attorney, on oath state that I caused copies of the foregoing **Appearance** and **Answer and Counterclaim of Defendant Connaissance Consulting, L.L.C.** to be served upon the person to whom this Notice is directed by causing copies of same to be placed in the U.S. mail receptacle located at 55 West Wacker Drive, Chicago, Illinois, with proper postage prepaid this 16th day of November, 2001.

Elfriede E. Karsch

**VERIFICATION BY CERTIFICATION**

Under penalties as provided by law pursuant to Section 5/1-109 of the Code of Civil Procedure, the undersigned certifies that the statements ste forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she believes the same to be true.

Elfriede E. Karsch

FILED
NOV 1 6 2001
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| James M. Tibor, | ) | |
| Plaintiff, | ) | Case No. 01C-7207 |
| vs. | ) | Judge Kennelly |
| Connaissance Consulting, LLC, | ) | Magistrate Judge Denlow |
| Defendant. | ) | |

DOCKETED
NOV 1 9 2001

**ANSWER AND COUNTERCLAIM OF DEFENDANT CONNAISSANCE CONSULTING, LLC**

Comes now the Defendant Connaissance Consulting, LLC ("Defendant" or "Connaissance"), and for its answer to Plaintiff's Amended Complaint admits, denies and avers as follows:

**FIRST DEFENSE**

1. Tibor is a resident of Aurora, Illinois and is a citizen of Illinois. Tibor was an account executive/salesman with Connaissance. Tibor's job function was selling new business and accounts for Connaissance. Tibor was paid a base salary of $95,000 per year plus commission.

**ANSWER:** Defendant avers that Defendant employed Plaintiff, James M. Tibor, on or about July 12, 1999, as an Account Executive. Defendant further avers that on or about April 4, 2000, Plaintiff became the Director of Indirect Sales for Defendant, and on or about November 8, 2000, Plaintiff became Director of Partner Services for Defendant. Defendant also avers that on or about April 4, 2000, Plaintiff became responsible, in part, for developing and selling Defendant services on a subcontract basis to other large consulting organizations, and that



Plaintiff's salary was set forth in the Employment Agreement attached as Exhibit A to the Plaintiff's Amended Complaint. Defendant denies each and every remaining allegation set forth in Paragraph 1 of the Amended Complaint.

2. Connaissance is a limited liability company formed under the laws of Minnesota with its principal place of business located at 8101 North High Street, Columbus, Ohio 43235 Connaissance is an information technology consulting company.

**ANSWER:** Defendant avers that it is an Ohio limited liability company. Defendant admits that its principal place of business in located at 8101 North High Street, Columbus, Ohio 43235 and that Defendant is in the business of information technology training and consulting. Defendant denies each and every remaining allegation set forth in Paragraph 2 of the Amended Complaint.

3. The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 because plaintiff and defendant are of diverse citizenship and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

**ANSWER:** Defendant admits the allegations set forth in Paragraph 3 of the Amended Complaint only insofar as such allegations are directed at a statement of the procedural jurisdiction of the Court with respect to Plaintiff's claims and denies such allegations insofar as they purport to assert that the facts alleged in the Amended Complaint state a cause of action, element(s) of a cause of action, or a valid claim for relief under federal and/or state law against Defendant.

4. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(a) because the contractual breaches, statutory violations and tortious conduct giving rise to the claims occurred in this district and division.

**ANSWER:** Defendant admits the allegations set forth in Paragraph 4 of the Amended Complaint only insofar as such allegations are directed at a statement of the venue of the Court with respect to Plaintiff's claims and denies such allegations insofar as they purport to assert that the facts alleged in the Amended Complaint state a cause of action, element(s) of a cause of action, or a valid claim for relief under federal and/or state law against Defendant.

5. In or about July 12, 1999, Tibor took a job with Connaissance as an account executive, and the parties entered into the Employment Agreement ("Agreement") which states among other matters Tibor's salary and commission and the grounds for termination. A true and correct copy of the Agreement is attached as Exhibit A. The Agreement sets Tibor's base salary at $95,000, and sets forth the commission obligation of Connaissance. It also states that Connaissance can only terminate Tibor for violations of law or poor performance, and that termination for poor performance can only be accomplished after the issuance of a written warning.

**ANSWER:** Defendant avers that Defendant employed Plaintiff, on or about July 12, 1999, as an Account Executive. Defendant further avers that on or about April 4, 2000, Plaintiff became the Director of Indirect Sales for Defendant, and on or about November 8, 2000, Plaintiff became Director of Partner Services for Defendant. Defendant also avers that on or about April 4, 2000, Plaintiff became responsible, in part, for developing and selling Defendant's services on a subcontract basis to other large consulting organizations, and that Defendant entered into an Employment Agreement (hereafter "Agreement") with Plaintiff, a copy of which is attached to Plaintiff's Amended Complaint as Exhibit A. Defendant avers that the Agreement speaks for itself and denies each and every remaining allegation set forth in Paragraph 5 of the Amended Complaint.

6. In or about April 4, 2000, by way of an e-mail authored by Bill Ziska, who was Vice President of the Central Region for Connaissance and Tibor's supervisor, Connaissance amended the Agreement's commission arrangement with Tibor to include an additional commission. A true copy of the April 4, 2000 e-mail is attached hereto as Exhibit B. The April 4th e-mail states that Tibor would receive an additional 2% commission for "all billing revenue generated by Connaissance to Siebel Professional Service, IBM, and any and all other staff supplementation sub-contracting non-project revenue where Connaissance is not delivering a scope of work and documented deliverable, and Alliance partner relationship with Connaissance regardless of the salesperson responsible for the engagement execution or fruition effective May 1, 2000."

**ANSWER:** Defendant admits that William Ziska, a former Vice President of the Central Region for Defendant, sent Plaintiff an e-mail dated April 4, 2000, a copy which is attached to Plaintiff's Amended Complaint as Exhibit B. Defendant avers that the e-mail, attached to Plaintiff's Amended Complaint as Exhibit B, speaks for itself. Defendant denies each and every remaining allegation set forth in Paragraph 6 of the Amended Complaint.

7. Thereafter, Tibor performed substantial work for Connaissance in reliance upon the Agreement as modified on April 4, 2000, and Connaissance generated substantial revenues for which it owed a 2% commission to Tibor based on the Agreement as modified on April 4, 2000.

**ANSWER:** Defendant denies each and every allegation set forth in Paragraph 7 of the Amended Complaint.

8. Connaissance failed to pay any of the 2% commissions due and owing to Tibor based on the April 4th e-mail despite repeated requests from Tibor that it do so, and repeated oral

and written acknowledgments from various employees of Connaissance to Tibor that such commissions were due and owing and would be paid. See Exhibits C-E.

**ANSWER:** Defendant admits that Plaintiff made claims for commissions based on the April 4, 2000 e-mail, which is attached to Plaintiff's Amended Complaint as Exhibit B. Defendant avers that that certain employees of Defendant were under the mistaken impression that Plaintiff may have been owed unpaid commission until Harold Williams, President of Connaissance Consulting, LLC, investigated Plaintiff's claims in August 2001, and determined that Defendant did not owe Plaintiff any unpaid commissions. Defendant further avers that Mr. Williams and Plaintiff engaged in discussions regarding Plaintiff's claims of commissions and that Mr. Williams informed Plaintiff of Mr. Williams' findings regarding Plaintiff's claims in August 2001. Defendant further avers that the e-mails, attached to Plaintiff's Amended Complaint as Exhibit C-E, speak for themselves. Defendant denies each and every remaining allegation set forth in Paragraph 8 of the Amended Complaint.

9. As of August 27, 2001 at least $85,000 was due and owing to Tibor based on the April 4th e-mail which modified the Agreement.

**ANSWER:** Defendant denies each and every allegation set forth in Paragraph 9 of the Amended Complaint.

10. On or about August 27, 2001, Tibor sent an e-mail to Harold Williams, the President of Connaissance demanding payment of the 2% commissions due and owing. A true and correct copy of the e-mail is attached hereto as Exhibit F. Tibor stated in the e-mail that he was willing to compromise his 2% commission claim with a payment of $38,500, even though a substantially larger amount was due and owing.

**ANSWER:** Defendant admits that Plaintiff sent Mr. Williams an e-mail dated August 27, 2001, a copy of which is attached to Plaintiff's Amended Complaint as Exhibit F. Defendant avers that the e-mail, attached to Plaintiff's Amended Complaint as Exhibit F, speaks for itself. Defendant denies each and every remaining allegation set forth in Paragraph 10 of the Amended Complaint.

11. In response to and retaliation for Tibor's August 27, 2001 demand for wages which were due and owing and to Tibor's exercise of his rights under the Attorneys Fees in Wage Actions Act (the "Act"), 705 ***ILCS*** 225/1, on August 31, 2001, Williams wrongfully terminated Tibor in violation of the terms of the Agreement. Connaissance did not terminate Tibor for poor performance or violation of law and did not provide Tibor with a written warning that he faced termination as required by the Agreement.

**ANSWER:** Defendant avers that Defendant properly terminated Plaintiff. Defendant also admits that Defendant did not terminate Plaintiff for a violation of law. Defendant denies each and every remaining allegation set forth in Paragraph 11 of the Amended Complaint.

12. On the morning of August 27, 2001, Williams told Tibor in a telephone conversation that Tibor was being terminated. Williams stated: "We've made some strategic decisions about our indirect business, and have concluded that your position is no longer needed. Therefore, your last day is today; you will be paid a severance through next Friday." Williams did not state that Connaissance was terminating Tibor due to poor performance, violations of law, or violations of company policy. Williams also stated with regard to the 2% commission monies: "I have reviewed that documentation, and do not feel any of those commissions meet the criteria or spirit of the agreement. I have dismissed those entirely and will not be issuing payment on any part of them."

**ANSWER:** Defendant avers that Mr. Williams had a conversation with Plaintiff, on or about August 31, 2001, regarding Defendant's decision to terminate the Agreement between Plaintiff and Defendant, a copy of which is attached to Plaintiff's Amended Complaint as Exhibit A, but that there was no discussion of any alleged 2% commissions during that conversation. Defendant admits that, during that conversation, Mr. Williams did not state that Defendant was terminating Plaintiff for violations of law or violations of company policy. However, Defendant avers that Defendant terminated Plaintiff due to Plaintiff's continued failure to generate business as required under the Agreement and due to a strategic organizational decision based on market conditions that eliminated Plaintiff's position. Defendant denies each and every remaining allegation set forth in Paragraph 12 of the Amended Complaint.

13. Immediately following this conversation, Williams sent an e-mail to Tibor dated August 31, 2001 which confirming the termination. The e-mail stated that Tibor was supposedly being terminated due to Connaissance losing business but not due to any poor performance by Tibor. The e-mail stated in relevant part: "It is my unfortunate duty to inform you that your position is being eliminated from Connaissance due to the continued deterioration of our indirect business environment and because of this fact Connaissance has reviewed its support needs and has determined that your position is not warranted." A true and correct copy of the August 31, 2001 e-mail is attached hereto as Exhibit G.

**ANSWER:** Defendant admits that immediately following Mr. Williams' conversation with Plaintiff, on or about August 31, 2001, Mr. Williams sent Plaintiff an e-mail, a copy of which is attached to Plaintiff's Amended Complaint as Exhibit G, confirming the termination. Defendant avers that the e-mail, attached to Plaintiff's Amended Complaint as Exhibit G, speaks

for itself. Defendant denies each and every remaining allegation set forth in Paragraph 13 of the Amended Complaint.

14. At all relevant times prior to his termination, Tibor was (a) the top salesman at Connaissance and was responsible for generating over 40% of Connaissance revenues; and (b) had not engaged in any violations of law or company policy.

**ANSWER:** Defendant admits that Defendant was not aware of any violations of law by Plaintiff at the time of Plaintiff's termination. Defendant denies each and every remaining allegation set forth in Paragraph 14 of the Amended Complaint. Defendant avers Plaintiff had a negative booking of business which represented a negative 131% of his quota for the period of January 2001 through August 31, 2001 and that he was routinely informed by Defendant that he was not meeting his quotas under the Agreement.

15. The reasons stated by Connaissance for terminating Tibor were mere pre-text. Connaissance fired Tibor in retaliation for exercising his rights under Illinois law and seeking to be paid the substantial wages which were due and owing to him.

**ANSWER:** Defendant denies each and every allegation set forth in Paragraph 15 of the Amended Complaint.

16. On August 31, 2001, Tibor sent Williams a final written demand letter for the over $85,000 in commissions which were due and owing. In that e-mail, Tibor, offered to resolve the commission claim for a payment of $25,000, which offer was a compromise and did not reflect that far more money was due and owing to Tibor. A true and correct copy of Tibor's August 31, 2001 e-mail is attached as Exhibit H. Connaissance did not respond to this demand letter, and has maintained its refusal to pay the in excess of $85,000 in 2% commission monies which are due and owing to Tibor.

**ANSWER:** Defendant admits that Plaintiff made a written demand, on or about August 27, 2001, via e-mail to Mr. Williams for commissions Plaintiff alleged were due and owing, a copy of which is attached to Plaintiff's Amended Complaint as Exhibit F. Defendant avers that the e-mail, attached to Plaintiff's Amended Complaint as Exhibit F, speaks for itself and that Mr. Williams investigated Plaintiff's claims for commission and determined that Defendant had paid Plaintiff all commissions due Plaintiff. Defendant avers that Mr. Williams communicated Defendant's position to Plaintiff regarding Plaintiff's claims for commissions prior to Plaintiff's termination. Defendant denies each and every remaining allegation set forth in Paragraph 16 of the Amended Complaint.

17. By e-mails dated August September 14, 2001, Tibor requested that Connaissance pay him $1729.32 in gross vacation pay which is still due and owing to him and for his last pay check for $3653.85 in gross pay. True and correct copies of these September 14, 2001 e-mails are attached as Exhibits H and I. Connaissance has refused to pay these monies.

**ANSWER:** Defendant admits that Plaintiff made written demands, on or about September 14, 2001, to Mr. Williams, and Steven Minick, Chief Operating Officer, for vacation pay and severance Plaintiff claimed was due Plaintiff and that Defendant has not paid such claims. Copies of these demands are attached to Plaintiff's Amended Complaint as Exhibits H and I respectively. Defendant avers that Defendant has disputed Plaintiff's claims, in part, due to Defendants overpayment of over $16,000.00 in commissions to Plaintiff, based on a contract between IBM Global Services (hereafter "IGS") and Defendant, which IGS has repudiated.

18. On or about September 10, 2001, Tibor obtained new employment with Blue Hammock, Inc. Tibor's base salary with Blue Hammock is $80,000 plus commissions. Tibor stands to make substantially less money with Blue Hammock for foreseeable future than he was

entitled to make, and would have made under the Agreement as modified the by April 4, 2001 e-mail, if Connaissance had not wrongfully terminated. In addition, pursuant to an April 20, 2001 agreement, Tibor is entitled to an award of phantom stock pursuant to the Connaissance compensation plan as stated in Exhibit J hereto, which is a copy of Tibor' s unsigned copy of that agreement.[1] Accordingly, by wrongfully terminating Tibor in violation of the Agreement and Illinois public policy, Connaissance has wrongfully attempted to deny Tibor phantom stock which would be due and owing to him, and to prevent phantom stock already provided to Tibor from vesting.

**ANSWER:** Defendant denies for lack of knowledge or information sufficient to admit or deny the truth of the averments that Plaintiff obtained new employment with Blue Hammock, Inc., on or about September 10, 2001, or that Plaintiff's base salary with Blue Hammock is $80,000 plus commissions. Defendant avers that the Award of Phantom Stock, a copy of which is attached to Plaintiff's Amended Complaint as Exhibit J, speaks for itself. Defendant avers that the Award was contingent upon meeting the requirements in the Phantom Stock Agreement which the Plaintiff has failed to attach as an Exhibit to the Complaint. Defendant denies each and every remaining allegation in Paragraph 18 of the Amended Complaint.

**Count I**

19. Tibor realleges paragraphs 1-18.

**ANSWER:** For its response to Paragraph 19 of the Amended Complaint, Defendant realleges the admissions, averments and denials of Paragraph 1 through Paragraph 18 of this Answer.

20. Connaissance breached the Agreement by (i) terminating Tibor on grounds which are prohibited under the Agreement; and (ii) for failing to provide written notice of its intent to

[1] Tibor provided a signed copy of the phantom stock agreement to Connaissance.

terminate as required by the Agreement. Connaissance also breached the Agreement, as modified by the April 4, 2000 e-mail, by failing to pay Tibor (a) the 2% commissions which are due and owing and which exceed $85,000; (b) vacation pay of $1729.32; and (c) his last pay check worth $3653.85 in gross pay.

**ANSWER:** Defendant denies each and every allegation in Paragraph 20 of the Amended Complaint.

21. Plaintiff has performed all of his obligations under the Agreement and the Agreement as modified by the April 4, 2000 e-mail.

**ANSWER:** Defendant denies each and every allegation in Paragraph 21 of the Amended Complaint.

22. As a direct and proximate result of Tibor's breaches of the Agreement, as stated in Paragraph 20, Tibor has suffered the following damages: (a) at least $85,000 in unpaid commissions plus pre-judgment interest; (b) vacation pay of $1729.32 plus pre-judgment interest; (c) Tibor's last paycheck worth $3653.85 in gross pay plus pre-judgment interest; (d) lost future income and commissions worth in excess of $100,000; and (d) unpaid and lost phantom stock.

**ANSWER:** Defendant denies each and every allegation in Paragraph 22 of the Amended Complaint.

**Count II**

23. Tibor realleges paragraphs 1-22.

**ANSWER:** For its response to Paragraph 23 of the Amended Complaint, Defendant realleges the admissions, averments and denials of Paragraph 1 through Paragraph 22 of this Answer.

24. Tibor is an employee of Connaissance, as defined by the Attorneys Fees in Wage Actions Act (the "Act") in that he was hired by Connaissance as a salesman. 705 ***ILCS*** 225/1.

**ANSWER:** Defendant admits that Defendant employed Plaintiff pursuant to the Agreement attached to Plaintiff's Complaint as Exhibit A. Defendant denies each and every remaining allegation set forth in Paragraph 24 of the Amended Complaint.

25. The at least $85,000 in 2% commission monies due and owing to Tibor by Connaissance are wages as defined in the Act because they are part of Plaintiff's compensation for the services he rendered, work he performed and other consideration he provided as an employee of Connaissance. Further, Tibor's last paycheck and vacation pay are wages as defined by the Act.

**ANSWER:** Defendant denies each and every allegation set forth in Paragraph 25 of the Amended Complaint.

26 (39). Tibor is entitled to reasonable attorneys' fees and costs in pursuing his claims for wages set forth in this count pursuant to 705 ***ILCS*** 225/1.

**ANSWER:** Defendant denies each and every allegation set forth in Paragraph 26 of the Amended Complaint (incorrectly numbered Paragraph 39 of the Amended Complaint).

27 (40). By various e-mails (attached as exhibits hereto) sent more than three days before Tibor filed this Amended Complaint, Tibor demanded payment of the various wages due and owing to him. Connaissance refused to pay such monies.

**ANSWER:** With regard to Paragraph 27 of the Amended Complaint (incorrectly numbered Paragraph 40 of the Amended Complaint), Defendant admits that Plaintiff has made claims for commissions and wages that Plaintiff claims are due Plaintiff and that Plaintiff made those claims prior to filing his Amended Complaint. Defendant avers Defendant has paid

Plaintiff all the commissions and wages due Plaintiff and that, in fact, Defendant has overpaid Plaintiff over $16,000.00 in commissions regarding an IGS contract which IGS has repudiated. Defendant denies each and every remaining allegation set forth in Paragraph 27 of the Amended Complaint.

**Count III**

28 (41). Tibor realleges paragraphs 1-40.

**ANSWER:** For its response to Paragraph 28 of the Amended Complaint (incorrectly numbered as Paragraph 41 of the Amended Complaint), Defendant realleges the admissions, averments and denials of Paragraph 1 through Paragraph 27 of this Answer.

29 (42). Connaissance terminated Tibor in violation of established Illinois public policy and in retaliation for Tibor exercising his rights under the Act.

**ANSWER:** Defendant denies each and every allegation set forth in Paragraph 29 of the Amended Complaint (incorrectly numbered as Paragraph 42 of the Amended Complaint).

30 (43). As a direct and proximate result of Connaissance's wrongful termination in violation of Illinois public policy, Tibor suffered the following damages: (a) lost future income and commissions worth in excess of $100,000; and (b) unpaid and lost phantom stock.

**ANSWER:** Defendant denies each and every allegation set forth in Paragraph 30 of the Amended Complaint (incorrectly numbered as Paragraph 43 of the Amended Complaint).

31 (44). Connaissance acted willfully and wantonly in terminating Tibor in violation of established Illinois public policy.

**ANSWER:** Defendant denies each and every allegation set forth in Paragraph 31 of the Amended Complaint (incorrectly numbered as Paragraph 44 of the Amended Complaint).

**Count IV**

32 (45). Tibor realleges paragraphs 1-44.

**ANSWER:** For its response to Paragraph 32 of the Amended Complaint (incorrectly numbered as Paragraph 45 of the Amended Complaint), Defendant realleges the admissions, averments and denials of Paragraph 1 through Paragraph 31 of this Answer.

33 (46). When Connaissance wrongfully terminated Tibor, he had accumulated vacation and personal time.

**ANSWER:** Defendant denies each and every allegation set forth in Paragraph 33 of the Amended Complaint (incorrectly numbered as Paragraph 46 of the Amended Complaint).

34 (47). Section 5 of the Wage Payment Collection Act, 820 ILCS 115/5 provides that upon termination of employment, the employer must pay final compensation, including all unused vacation time.

**ANSWER:** Defendant avers that Section 5 of the Wage Payment Collection Act, speaks for itself and Defendant denies each and every remaining allegation set forth in Paragraph 34 of the Amended Complaint (incorrectly numbered as Paragraph 47 of the Amended Complaint).

35 (48). Despite its obligation to do so, Connaissance failed and refused to pay Tibor all final compensation due and owing to him.

**ANSWER:** Defendant denies each and every allegation set forth in Paragraph 35 of the Amended Complaint (incorrectly numbered as Paragraph 48 of the Amended Complaint).

36. Defendant denies each and every allegation of the Amended Complaint not hereinbefore specifically admitted to be true.

WHEREFORE, Defendant, Connaissance Consulting, LLC, prays for this Court to render judgment in Defendant's favor on Plaintiff's Amended Complaint and at Plaintiff's cost, grant judgment to Defendants for such fees, costs, and expenses as may be incurred herein, and grant Defendants such other and further relief as is just and proper under the circumstances.

**SECOND DEFENSE**

37. The Amended Complaint fails to state a claim upon which relief can be granted.

**THIRD DEFENSE**

38. Plaintiff has a duty to take reasonable steps to mitigate his alleged damages, but has failed or refused to do so.

**FOURTH DEFENSE**

39. Plaintiff's claims, in whole or in part, are not supported by sufficient consideration.

**FIFTH DEFENSE**

40. There was no meeting of the minds regarding the alleged amendment to Plaintiff's Employment Agreement.

**SIXTH DEFENSE**

41. Plaintiff's claims, in whole or in part, are barred by the doctrine of equitable estoppel.

**SEVENTH DEFENSE**

42. Defendant hereby reserves its right to supplement its affirmative defenses as discovery proceeds.

**DEFENDANT CONNAISSANCE CONSULTING, LLC'S COUNTERCLAIM AGAINST PLAINTIFF, JAMES M. TIBOR**

Comes now the Defendant, Connaissance Consulting, LLC and for its counterclaim against Plaintiff, James M. Tibor, states and affirms as follows:

1. While Plaintiff was employed by Defendant, Defendant contracted with IBM Global Services (hereinafter "IGS) in October 2000, to perform certain informational technology services for IGS (hereinafter "Original IGS Contract"). Because Plaintiff obtained the Original IGS Contract on Defendant's behalf, and pursuant to the Plaintiff's Employment Agreement, a copy of which is attached to Plaintiff's Amended Complaint as Exhibit A, Defendant paid Plaintiff commissions based on the fees generated under the Original IGS Contract.

2. On December 7, 2000, before the Original IGS Contract had expired, IGS requested an extension of the Original IGS Contract and for Defendant to continue to provide the services identified under Original IGS Contract through October 2001 (hereinafter "IGS Extension"). As a result, Defendant provided its services under the IGS Extension and billed IGS for its services.

3. Before Defendant collected the fees from IGS for the services provided to IGS under the IGS Extension, Defendant paid Plaintiff over $16,000 in commissions on the fees billed to IGS for the services provided to IGS during the IGS Extension (hereinafter "Commissions").

4. During the summer of 2001, IGS delayed payment of the services provided by Defendant during the IGS Extension. On or about September 13, 2001, IGS notified Defendant that IGS was formally refusing to pay for any services provided by Defendant under the IGS Extension and that IGS had not execute a new contract with Defendant.

5. Despite Defendant's diligent attempts to collect the unpaid fees for the services provided to IGS during the IGS Extension, IGS has not paid Defendant those fees to date, and continues to refuse to pay those fees.

6. Plaintiff was unjustly enriched when Defendant paid Plaintiff the Commissions because Defendant has not been paid the fees upon which Defendant paid the Commission despite its diligent attempts to collect the unpaid fees from IGS.

5. Defendant has requested Plaintiff return the Commissions to Defendant but Plaintiff has refused to do so, and, to date, has not returned the Commissions.

WHEREFORE, Defendant, Connaissance Consulting, LLC, prays for this Court to render judgment in Defendant's favor on Defendant's Counterclaim in an amount in excess of $16,000 with pre-judgment interest, grant judgment to Defendants for such fees, costs, and expenses as may be incurred herein, and grant Defendants such other and further relief as is just and proper under the circumstances.

Respectfully submitted,

Mark N. Senak (6196583)
Robins, Kaplan, Miller & Ciresi
Suite 1400
55 West Wacker Drive
Chicago Illinois 60601-1701
(312) 782-9200
Fax (312) 782-7756
Counsel for Defendant Connaissance Consulting LLC

Of Counsel:

James G. Petrie (0059446)
BRICKER & ECKLER LLP
100 South Third Street
Columbus, OH 43215-4291
(614) 227-2373

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing ANSWER AND COUNTERCLAIM OF DEFENDANT CONNAISSANCE CONSULTING, LLC was sent by regular U.S. mail, postage prepaid, to Peter S. Lubin, DiTommaso & Associates, P.C., 1315 West 22nd Street, Suite 225, Oak Brook, Illinois 60523 on this 16th day of November, 2001.

Mark N. Senak